IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONNA FRITZ,

    Plaintiff,                                      No. CIV S-09-3588-CMK (TEMP)

    vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.                                   MEMORANDUM OPINION AND ORDER

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-motion for summary judgment (Doc. 21). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on December 13, 2004 alleging an onset of disability on October 1, 2001 due to physical impairments. (Certified Administrative Record "CAR" 87-89.) Specifically, plaintiff claims disability based on impairments due to tendon problems in both hands, arthritis and neck and leg problems. (CAR 118-119.) Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held telephonically on September 15, 2006, before Administrative Law Judge ("ALJ") Peter F. Belli. (CAR 494-529.) In a March 23, 2007 decision, the ALJ concluded that plaintiff is not disabled.[2] (CAR 40-46.) Plaintiff requested the

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Appeals Council review the decision and on September 20, 2007, the Appeals Council remanded the case for a new hearing. (CAR 58-61.) Supplemental telephonic hearings were held before ALJ Stanley R. Hogg on December 17, 2007 and April 30, 2009, at which plaintiff, a vocational expert, and a consulting physician testified. (CAR 530-566, 567-589.) In a May 29, 2009 decision, the ALJ concluded that plaintiff is not disabled based on the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act though December 31, 2006.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2001 through her date last insured of December 31, 2006 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: bilateral upper extremity DeQuervain's disease, possible carpal tunnel syndrome, degenerative disc disease of the cervical spine, early degenerative disc disease of the lumbar spine, minimal degenerative joint disease of the left knee, diabetes, and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work[3] as defined in 20

---

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[3] 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the

|   |   |
|---|---|
|   | CFR 404.1567(b) except she can perform frequent but not constant reaching, handling, and fingering.  She is precluded from forceful gripping, grasping, or torqueing.  She can occasionally, but not frequently reach at or about shoulder level.  She cannot engage in repetitive motions with her wrists.  She can frequently balance.  She should never climb ladders, ropes, or scaffolds, and should not work at heights.  She can occasionally climb stairs and ramps.  She can occasionally stoop, kneel, crouch, squat, or crawl. |
| 6. | Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). |
| 7. | The claimant was born on September 17, 1954 and was a younger individual age 18-49, on the alleged onset date.  The claimant subsequently changed age category and was an individual closely approaching advanced age as of the date last insured (20 CFR 404.1563). |
| 8. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
| 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). |
| 11. | The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2001, the alleged onset date, through December 31, 2006, the date last insured(20 CFR 404.1520(g)). |

CAR 17-29.  After the Appeals Council declined review on October 20, 2009, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

---

ability to do substantially all of these activities.

4

whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred in several ways: (1) the ALJ improperly discounted the opinion of a testifying physician and in so doing incorrectly assessed plaintiff's residual functional capacity; (2) the ALJ improperly discredited Plaintiff; and (3) the ALJ relied on the testimony of the vocational expert provided in response to an incomplete hypothetical.

**A.  EVALUATION OF MEDICAL EVIDENCE AND ASSESSMENT OF RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff contends the ALJ improperly accorded no weight to the opinion of testifying physician Dr. Jensen that plaintiff would need a five minute break every hour when walking/standing and that in so doing, improperly assessed plaintiff's residual functional

5

capacity. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

   Dr. Jensen testified that plaintiff would need to take a five-minute sitting break for every 60 minutes of walking or standing.  (CAR 582-583.)  Plaintiff contends the ALJ erroneously rejected this limitation.  Upon review of the record as a whole, the court finds this argument meritless.  The ALJ thoroughly and accurately summarized the medical records in the written decision.  (CAR 20-23.)  In rejecting Dr. Jensen's five-minute break limitation, the ALJ correctly noted that no other record opinion assessed such a limitation and that there were only minimal findings regarding plaintiff's back disorder.  (CAR 26).   The court finds the ALJ properly rejected the unsupported opinion of Dr. Jensen and that substantial evidence supports the ALJ's decision to accord significant weight to the opinions of the state agency physicians.  (CAR 22-23 (discussion of state agency and Dr. Jensen's); 214-223 (agreed medical examiner Dr. Johnson concluded plaintiff could not perform past work but should be retrained; no limitations on standing/walking); 334-337 (examining orthopedist Dr. Kumar assessed no limitations on walking/standing); 340 (state agency assessed plaintiff could stand/walk six hours in an 8-hour workday with normal breaks); 346 (state agency physician affirmed by another state agency physician); 396, 411-17 (early degenerative changes shown on x-ray with minimal changes in left knee); 397, 417 (normal deep tendon reflexes, mild tenderness in legs, no edema); 437-438, 452-453, 440-441, 456-457 (MRI scans showed degenerative changes in cervical spine; scan normal except for moderate arthritic changes, no disc herniation or spinal stenosis); 580 (testimony of Dr. Jensen that there was no evidence in record of radiculopathy and EMG studies were normal).)

   Plaintiff further contends the ALJ did not properly evaluate the effect of her obesity on her impairments and that Dr. Jensen's five-minute break limitation should have been

adopted because of her obesity. SSR[4] 02-1p directs adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, such as the assessment of an individual's RFC. The Ruling explains how obesity may increase the severity of related impairments, particularly musculoskeletal and respiratory impairments, and explains how the effects of obesity should be evaluated. An ALJ must evaluate the additional impact of a claimant's obesity both singly and in combination with the claimant's other impairments.

At step two of the sequential evaluation, the ALJ included obesity as a severe impairment. The ALJ discussed the opinion of Dr. Jensen that plaintiff's obesity in combination with her other impairments did not meet or equal a listed impairment. (CAR 18.) The ALJ discussed plaintiff's obesity at some length and also set forth in some detail the findings of the physical consultative examination and state agency physician's assessment in which plaintiff's height and weight and related obesity were noted. (CAR 22, 25, 334-337 (67-1/2", 320 lb. at February 2005), 340 (reviewing physician noted plaintiff was "morbidly obese.") At step four of the sequential evaluation, the ALJ determined that plaintiff's residual functional capacity was limited to light work with certain upper extremity limitations and that additionally, plaintiff should never climb ladders, ropes, or scaffolds, and should not work at heights, occasionally climb stairs and ramps, and occasionally stoop, kneel, crouch, squat, or crawl. These limitations are consistent with that of the state agency physician, who was aware of plaintiff's obesity and which limitations appear to accommodate plaintiff's obesity impairment. (CAR 340-342). Plaintiff cites no evidence in the record that the severity of plaintiff's other impairments was increased by her obesity such that additional limitations were required. Plaintiff's conclusory

---

[4] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir.2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

argument concerning the alleged application of the wrong legal standard to evaluate the impact of her obesity is unpersuasive. The court finds no error in the ALJ's application of SSR 02-1p to the facts of this case.

Moreover, even if the ALJ committed error by not according significant weight to the opinion of Dr. Jensen that plaintiff would require five-minute breaks after standing or walking for one hour, such error is harmless. The vocational expert testified that of the jobs identified as work plaintiff could perform, a person employed as a storage facility clerk could take breaks indefinitely because of the unstructured nature of the job. (CAR 561.) Because the vocational expert further testified that there were 5,800 storage facility clerk positions available in California and 55,000 nationally, substantial evidence supports the ALJ's ultimate conclusion that there were significant numbers in the national economy that plaintiff could have performed and plaintiff is not therefore disabled. See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in the county and 64,000 nationwide are sufficient); Barker v. Secretary HHS, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,200 jobs in Southern California are sufficient).

### B.   PLAINTIFF'S CREDIBILITY

Plaintiff further contends the ALJ did not set forth proper reasons for finding plaintiff's subjective complaints not credible. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d

9

1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Plaintiff argues the ALJ improperly rejected her testimony regarding her subjective complaints. The ALJ found plaintiff's testimony and subjective complaints not fully

credible. (CAR 24.)  The ALJ first correctly noted plaintiff's primary treatment and complaints involved her upper extremities.  The ALJ also noted that the objective findings in the medical record  pertaining to any standing and walking limitations (as discussed above) were almost completely normal, including no evidence of ongoing limitations in range of motion, no neurological defects, no atrophy, and no edema in the lower extremities.  Also factored into the credibility analysis was the fact that plaintiff does not use a cane and has received essentially no treatment for an allegedly disabling condition related to plaintiff's lower extremities.  The ALJ also considered plaintiff's activities of daily living, which are consistent with an ability to perform light work.  The ALJ also noted that the reason plaintiff stopped working, as reflected in the medical records, is that plaintiff was helping out with her family, and not because of an allegedly disabling condition with an onset date of October 1, 2001.  (CAR 25; 196 (plaintiff reported in March 2002 that she took leave of absence in November of 2001 to help daughter with new baby); 186 (plaintiff stated to physician in October 2002 that she was not working, "just helping my daughter with her kids.")  The ALJ also relied on the opinions of the state agency physicians that plaintiff could walk/stand six hours with normal breaks during an eight-hour workday.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (opinions of examining and state agency physicians may properly support credibility determination).  Also considered was plaintiff's release to work in January 2004 after surgery on her wrists and the minimal treatment since that time.  (CAR 25, 187-88 (significant improvement); 209 (therapy was beneficial); 201 (excellent improvement in function; no restriction on activities at home).)

        The court finds the ALJ's credibility determination was supported by the record as a whole.  The ALJ did not rely solely on the lack of objective medical evidence to support his finding, nor can the court find that he misconstrued or ignored supportive relative evidence.  The factors considered by the ALJ were all valid and supported by substantial evidence.  The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

## C.  VOCATIONAL EXPERT TESTIMONY

Finally, plaintiff contends the ALJ failed to include all of plaintiff's limitations in the hypotheticals relied on by the ALJ in finding there were a significant number of jobs which plaintiff can perform.  Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

As discussed above, the ALJ properly assessed plaintiff's residual functional capacity and was not required to include a five-minute break limitation in any hypothetical posed to the vocational expert.  The hypothetical posed to the vocational expert by the ALJ, and ultimately relied on by the ALJ, included gripping and grasping, repetitive motion, and occasional fingering limitations.  (CAR 556-559.)  These limitations were properly assessed by the ALJ and were supported by the record.  The vocational expert identified three jobs, usher

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

(DOT[5] 344.667-014),[6] storage facility clerk (DOT 295.367-026),[7] and furniture rental clerk (DOT 295.357-018).[8]  (CAR 558.)  Plaintiff contends the ALJ committed error by not inquiring of the vocational expert whether this testimony was consistent with the DOT.  Although no inquiry was made at the hearing, the court finds such omission to be harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial

---

[5]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.   The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

[6]  The DOT provides in relevant part:  344.677-014 USHER (amuse. & rec.)
   Assists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display.

[7]  The DOT provides in relevant part:  295.367-026 STORAGE-FACILITY RENTAL CLERK (business ser.; retail trade)
   Leases storage space to customers of rental storage facility: Informs customers of space availability, rental regulations, and rates. Assists customers in selection of storage unit size according to articles or material to be stored. Records terms of rental on rental agreement form and assists customer in completing form. Photographs completed form and customer to establish identification record, using security camera. Computes rental fee and collects payment. Maintains rental status record and waiting list for storage units. Notifies customers when rental term is about to expire or rent is overdue. Inspects storage area periodically to ensure storage units are locked. Observes individuals entering storage area to prevent access to or tampering with storage units by unauthorized persons. Loads film into security and surveillance cameras, records dates of film changes, and monitors camera operations to ensure performance as required. Cleans facility and maintains premises in orderly condition.

[8]  The DOT provides in relevant part:  295.357-018 FURNITURE-RENTAL CONSULTANT (retail trade) alternate titles: decorator consultant; rental clerk, furniture
   Rents furniture and accessories to customers: Talks to customer to determine furniture preferences and requirements. Guides or accompanies customer through showroom, answers questions, and advises customer on compatibility of various styles and colors of furniture items. Compiles list of customer-selected items. Computes rental fee, explains rental terms, and presents list to customer for approval. Prepares order form and lease agreement, explains terms of lease to customer, and obtains customer signature. Obtains credit information from customer. Forwards forms to credit office for verification of customer credit status and approval of order. Collects initial payment from customer. Contacts customers to encourage followup transactions. May visit commercial customer site to solicit rental contracts, or review floor plans of new construction and suggest suitable furnishings. May sell furniture or accessories [SALESPERSON, FURNITURE (retail trade) 270.357-030].

review of social security cases). The ALJ specifically noted in the written decision that the vocational expert's testimony was consistent with the DOT. (CAR 28.) Moreover, the ALJ noted that all postural limitations had not been included in the hypothetical but compared the identified jobs with all limitations assessed by the ALJ and found that the identified jobs did not require postural movements beyond those in the established residual functional capacity. Id. The court's review of the job descriptions in the DOT demonstrates the ALJ was correct in this conclusion. Moreover, plaintiff fails to show any conflict between the DOT and the vocational expert's testimony. Cf. Massachi v. Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (procedural error harmless where no conflict). On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 20) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 21) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: February 7, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

JMM
fritz.ss